IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 05-19 Erie |
| ) | |
| MELISSA HICKS ) | |

### DEFENDANT'S POSITION WITH RESPECT TO SENTENCING FACTORS

AND NOW, comes the defendant, Melissa Hicks, by her attorney, Thomas W. Patton, Assistant Federal Public Defender, and respectfully files her Position With Respect To Sentencing Factors. In support thereof, counsel states:

### THE AMOUNT OF LOSS

The presentence report sets the total amount of loss at $40,407.10. This figure is based upon a spreadsheet created by the United States Postal Inspection Service which includes the names of seven individuals allegedly used by Ms. Hicks or an accomplice to make purchases, or attempt to make purchases, of goods using counterfeit checks. Ms. Hicks does not object to the inclusion of the checks using the names Stacey Childs, Navada Green, Yvette Middleton, Estelle Ramey, and Alvin Taylor. The total dollar amount of the checks written using these names is $22,393.64. Ms. Hicks does object to being held responsible for the checks using the names Robyn English, Eldora Harris, and Joyce Hunt. Ms. Hicks was not charged with passing any checks using these names, and there is no evidence to support the conclusion that Ms. Hicks did so.

The burden is always on the government to prove the amount of loss under the Sentencing Guidelines. United States v. Hayesl, 242 F.3d 114, 119 (3rd Cir. 2001), overruled on different grounds by U.S.S.G. App. C, amend. 617; United States v. Evans, 155 F.3d 245 (3rd Cir. 1998). The government has failed to meet its burden of proof with regard to the Eldora Harris, Robyn English,

and Joyce Hunt checks. As noted in paragraph 19, the government has presented no evidence to link Ms. Hicks to the Joyce Hunt check. Surely a complete lack of evidence linking Ms. Hicks to this check fails to establish by a preponderance of the evidence that Ms. Hicks was the individual who passed the check.

The only claimed link between Ms. Hicks and the Eldora Harris and Robyn English checks is the use of the same telephone number on the counterfeit checks in the name of Eldora Harris and Robyn English which also correspondence to the telephone number used on the Stacey Childs and Navada Green checks. This fact falls far short of proving by a preponderance of the evidence that Mr. Hicks passed the Eldora Harris or Robyn English checks. The PSR notes in paragraph 7 that someone using a computer manufactured the counterfeit checks at issue in this case using personal background information from individuals whose identities were either stolen or obtained in exchange for drugs. There are no allegations, or proof, that Ms. Hicks participated in the actual manufacturing of the counterfeit checks. Obviously, whoever manufactured the checks selected the telephone numbers to be placed on the checks, and the fact that the manufacture of the checks used the same fraudulent telephone number on checks using different names and addresses in no way establishes that the same individual passed every counterfeit check containing the fraudulent telephone number. Simply put, more than one person may pass counterfeit checks manufactured by another person.

The only mention of Eldora Harris or Joyce Hunt in the offense conduct section of the report appears in paragraph 13. That paragraph is based upon a police report from Butler Township discussing counterfeit checks passed at a Wal-Mart store located in Butler Township. The police report indicates that Wal-Mart contacted the Butler Township police regarding several bad checks that had been passed at the store in the names of Navada Green, Stacey Childs, Eldora Harris, and

Joyce Hunt. Detective Matthew Pearson asked the Wal-Mart store to obtain video surveillance tapes of the suspects passing the checks. The report goes on to detail Navada Green's report to police that her purse had been stolen in Pittsburgh and that she had subsequently been receiving reports that someone was passing checks in her name. On September 12, 2004, Ms. Hicks was apprehended by Butler Township police after she had attempted to pass a counterfeit check at the same Wal-Mart store using the name Yvette Middleton. At the time Mr. Hicks identified herself as Navada Green. Ms. Hicks was questioned about the Navada Green, Stacey Childs, Eldora Harris, and Joyce Hunt checks that had previously been passed at the Wal-Mart. Ms. Hicks admitted to passing the Navada Green and Stacey Childs checks, but did not admit to passing the Eldora Harris or Joyce Hunt checks. Wal-Mart provided Detective Pearson with video tapes of the Stacey Childs checks being passed and the person passing the checks matched Ms. Hicks' physical appearance.

Ultimately, Detective Pearson was able to discover Ms. Hicks' real name. Detective Pearson learned that Wilkinsburg Police Department was investigating the passing of counterfeit checks in the name of Stacey Childs and had determined that Ms. Hicks had passed the checks. Also, Detective Pearson learned from Pennsylvania State Police Trooper Crawford that Pennsylvania State Police at the Butler Barracks were investigating the passing of counterfeit checks in the name of Navada Green, Eldora Harris, and Yvette Middletown at the Clearview Mall. Trooper Crawford had identified Ms. Hicks as passing the Navada Green checks at the Clearview Mall. Attached to Detective Pearson's report are photocopies of the Navada Green, Stacey Childs, Eldora Harris, and Joyce Hunt checks. Below the photocopy of one of the Eldora Harris checks someone, presumably Detective Pearson, wrote "HAVE YET TO ID PERSON PASSING ELDORA HARRIS CHECKS." This would seem to be a stark admission that the government has no proof that Ms. Hicks is the

person who passed the Eldora Harris checks.

The burden of proof on this issue rests with the government. It has presented no evidence that establishes that it is more likely true than not that Ms. Hicks passed the Eldora Harris, Joyce Hunt, or Robyn English checks. Placing those checks on a spread sheet created by the United States Postal Service does not change that fact.

Without the Eldora Harris, Joyce Hunt, and Robyn English checks, the amount of loss in the case should be $22,393.64 which would result in only a 4-level increase in Ms. Hicks' offense level pursuant to § 2B1.1(b)(1) rather than a 6-level increase as calculated in paragraph 29. With only a 4-level increase for the amount of loss Ms. Hicks' total offense level should be 8.[1] An offense level of 8 and a criminal history category of VI results in an advisory guideline imprisonment range of 18 to 24 months. Restitution should be $15,751.87.

## UPWARD DEPARTURE

The presentence report states that an upward departure based on inadequacy of criminal history may be warranted pursuant to U.S.S.G. § 4A1.3. The <u>Commentary</u> to § 4A1.3 demonstrates that this is **not** an appropriate case for an upward departure based upon under-representation of Criminal History Category because, only a criminal history involving serious offenses may support an upward departure, and Ms. Hicks' history is **not** the type of history that would support an upward departure. Specifically, Application Note 2 regarding upward departures lists the following examples of situations in which an upward departure might be warranted:

(A)   <u>Examples</u> - An upward departure from the defendant's criminal history may be

---

[1] The offense level of 8 is also based on the addendum's conclusion that Ms. Hicks should not receive a 2-level pursuant to U.S.S.G. § 2B1.1(b)(10)(ii).

4

> warranted based on any of the following circumstances:
>
> (i)     A previous foreign sentence for a **serious offense.**
>
> (ii)    Receipt of a prior consolidated sentence of ten years for **a series of serious assaults**.
>
> (iii)   A similar instance of **large scale fraudulent misconduct**.
>
> (iv)    Commission of the instant offense while on bail or pretrial release for **another serious offense.**

These examples make clear that the Sentencing Commission did not contemplate an upward departure for an individual, such as Ms. Hicks, who has been repeatedly convicted of retail theft and forgery charges.

Similarly, the Commentary states in connection with upward departures from Criminal History Category VI, such as that mentioned by the presentence report here, that:

> "In determining whether an upward departure from Criminal History Category VI is warranted, the court should consider that the **nature** of the prior offenses rather than simply their number is often more indicative of the seriousness of the defendant's criminal record."  (Emphasis supplied).

The Background section of the Commentary also cites as an example of a defendant for whom such an upward departure might be warranted, "a defendant with **an extensive record of serious, assaultive conduct** who had received what might be considered extremely lenient treatment in the past."

Thus, the Commentary to § 4A1.3 repeatedly emphasizes that such upward departures are appropriate only for defendants with records of committing serious offenses, the seriousness of which are not reflected adequately in the defendant's criminal history score.  The Court is presented

with the opposite situation here -— a defendant some of whose past offense are so **minor** they are not reflected in his criminal history score.  Accordingly, an upward departure is not supported by applicable law or the Sentencing Guidelines.

        Respectfully submitted,

        <u>/s/ Thomas W. Patton</u>
        Thomas W. Patton
        Assistant Federal Public Defender
        PA I.D. No. 88653